**FILED**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FEB 2 4 2006

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO

| | |
|---|---|
| MOCAP INCORPORATED, a Missouri corporation, | )<br>)<br>) |
| PROTECTIVE INDUSTRIES, INC., a Delaware corporation, | )<br>)<br>)<br>) |
| HARMAN CORPORATION, a Michigan corporation, | )<br>)<br>)<br>) |
| and | )<br>) |
| ALLIANCE PLASTICS, a division of FILTRONA PLASTICS, LLC, a Delaware limited liability company, | ) Civil No. **4:06CV00323MLM**<br>)<br>)<br>) |
| Plaintiffs | ) **JURY TRIAL REQUESTED** |
| v. | )<br>) |
| SINCLAIR & RUSH, INC., a Delaware corporation, | )<br>)<br>) |
| Serve: 123 Manufacturers Drive<br>Arnold, Missouri 63010<br>Attention: Bradford Philip | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

### COMPLAINT

COME NOW Plaintiffs, MOCAP Incorporated, Protective Industries, Inc., Harman Corporation, and Alliance Plastics ("Plaintiffs"), by and through their attorneys, and hereby seeks a declaration that Defendant Sinclair & Rush, Inc.'s alleged trademark in "clerical collar look" handgrips is invalid and unenforceable, a declaration that Plaintiffs do not infringe upon the alleged trademark rights of Defendant Sinclair & Rush, Inc. ("Defendant") in the "clerical

1273554

collar look" design for handgrips, and injunctive relief and damages resulting from Defendant's unlawful activities in violation of the Antitrust Laws of the United States; or in the alternative, a declaration that a Settlement Agreement has been reached between the parties hereto with respect to the parties' rights and obligations in and to the "clerical collar look" trademark for handgrips, a declaration of the parties' rights and obligations under the Settlement Agreement, an injunction requiring Defendant to execute an instrument attesting to the terms and conditions of the Settlement Agreement as determined by this Court, and such other relief as this Court finds necessary and appropriate. In support of its Complaint, Plaintiffs state as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff MOCAP INCORPORATED is a Missouri corporation with its principal place of business in St. Louis, Missouri.

2. Plaintiff PROTECTIVE INDUSTRIES, INC. is a Delaware corporation with its principal place of business in Buffalo, New York. With respect to the subject matter of this Complaint, Protective Industries, Inc. is the successor in interest to Niagara Plastics Company.

3. Plaintiff HARMAN CORPORATION is a Michigan corporation with its principal place of business in Rochester, Michigan.

4. Plaintiff ALLIANCE PLASTICS is a division of FILTRONA PLASTICS, LLC, a Delaware limited liability company with its principal place of business in Erie, Pennsylvania.

5. Defendant SINCLAIR & RUSH, INC. is a Delaware corporation with its principal place of business in Arnold, Missouri.

6. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1338, and 1367, since at least one of Plaintiffs' counts arises under the Trademark Laws of the United States, 15 U.S.C. §§ 1051 et seq., and at least one of Plaintiffs' counts arises under the Antitrust Laws of the United States, 15 U.S.C. §§ 1 et seq.

7.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391, since Defendant's principal place of business is in Arnold, Missouri.

8.  This action is brought pursuant to 15 U.S.C. § 1 et seq., 15 U.S.C. § 1051 et seq., 28 U.S.C. § 2201 et seq., Rule 57 of the Federal Rules of Civil Procedure, and the statutory and common law of the state of Missouri. The action seeks declaratory judgments and injunctive relief regarding the rights and obligations of the parties with respect to an alleged trademark (the "alleged Trademark") claimed in Trademark Application Serial No. 75/334,728 (the "Application"), now pending before the United States Patent and Trademark Office ("USPTO"), and also referred to as the "clerical collar look" for handgrips, and seeks damages for Defendant's misuse of this Application.

9.  An actual justiciable controversy exists between Plaintiffs and Defendant involving their respective rights with regard to the alleged Trademark. Defendant has asserted that commercial use of handgrips embodying the "clerical collar look" by Plaintiffs will infringe Defendant's rights in the alleged Trademark, and further asserted that Plaintiffs have no right to commercially use such handgrips. Plaintiffs maintain that Defendant has no protectable right in the alleged Trademark, and has unlawfully attempted to enforce its alleged trademark rights. In the alternative, Plaintiffs maintain that a Settlement Agreement between the parties is valid and enforceable, and provides an affirmative defense against any claim of infringement of the alleged Trademark by Plaintiffs.

## GENERAL ALLEGATIONS

10.  On or about August 1, 1997, Defendant filed the Application in the USPTO. Regarding a description of the alleged Trademark, the Application states: "The mark consists of a colored distinctly visible longer inner continuous liner projecting from one end of a contrasting colored outer continuous surrounding shell in an inner liner/outer shell hand grip."

11. On or about November 16, 1999, the alleged Trademark of the Application was published in the Official Gazette of the USPTO. Publication was the beginning of a statutory period during which any person or entity could initiate a proceeding before the Trademark Trial and Appeal Board ("TTAB") of the USPTO opposing the registration of the mark identified in the Application.

12. On or about February 4, 2000, Plaintiffs, individually, timely initiated opposition proceedings in the TTAB, commencing four opposition proceedings identified in the TTAB as Oppositions No. 91116787, 91116795, 91116796, and 91116797. These opposition proceedings were consolidated before the TTAB on January 14, 2003, and after consolidation are recorded primarily under Opposition No. 91116787. These opposition proceedings are hereinafter referred to collectively as the "Opposition."

13. The Opposition has been pending since initiation and remains pending now, though such Opposition has been and currently is suspended by the TTAB on motion of Plaintiffs in order to pursue this action before this Court.

14. Shortly after the Opposition was initiated, Defendant contacted Plaintiffs' counsel and stated that, in order to avoid additional litigation during the pendancy of the Opposition, Plaintiffs ought to "refrain from taking any action in the marketplace that would infringe on Defendant's clerical collar trade dress."

15. Thereafter, the parties engaged in settlement discussions through which was achieved an agreement on all material terms.

16. Plaintiffs have the present intent to use in commerce the "clerical collar look" on handgrips in accord with the Settlement Agreement reached between the parties.

4

17.   Defendant, however, has renounced the Settlement Agreement. Moreover, since renouncing the Settlement Agreement, Defendant has proceeded contentiously in the Opposition by opposing suspension or extension of time to discuss the Settlement Agreement and, further, by renouncing the parties' prior agreement to reopen discovery and testimony periods if settlement was not reached.

18.   From Defendant's clearly stated position to aggressively defend its alleged rights in the alleged Trademark, Plaintiffs have a present apprehension that, should they act on their intent to use or continue to use the alleged Trademark in commerce, legal action will be initiated by Defendant against Plaintiffs in an attempt to enjoin what Defendant would consider an infringement of its alleged "clerical collar look" Trademark.

## COUNT I
## TRADEMARK INVALIDITY AND UNENFORCEABILITY

19.   Plaintiffs reallege all allegations contained in paragraphs 1 - 18 of this Complaint as if fully set forth herein.

20.   The alleged Trademark, as described in the Application, does not function as a trademark.

21.   The alleged Trademark is a functional portion of the goods to which it is applied, and is essential to the construction of these goods.

22.   The design of the alleged Trademark makes manufacture of the goods more cost effective.

23.   The alleged Trademark has failed to acquire distinctiveness or secondary meaning.

24.   The alleged Trademark neither identifies nor distinguishes Defendant's goods from the goods of others, nor does the alleged Trademark indicate source.

5

25. To permit registration of the alleged Trademark would essentially permit Defendant to use a trademark cause-of-action to improperly prevent other manufacturers from manufacturing such goods.

26. If Defendant is permitted to obtain a registration for the alleged Trademark, Plaintiffs will be severely and irreparably injured because they will be denied the ability to manufacture such products.

WHEREFORE, Plaintiffs pray:

A. For a judicial determination and declaration that the alleged Trademark is not registrable with the United States Patent and Trademark Office under the Trademark Laws of the United States;

B. For a judicial determination and declaration that the alleged Trademark, among other things, is functional, has failed to acquire secondary meaning, and is non-distinctive; and

C. For a judicial determination and declaration that Plaintiffs' acts in commercially using goods embodying the alleged Trademark do not infringe any of Defendant's rights;

D. For such other relief as the Court deems just and equitable.

## COUNT II
## ANTITRUST VIOLATIONS

27. Plaintiffs reallege all allegations contained in paragraphs 1 - 26 of this Complaint as if fully set forth herein.

28. This is a claim for treble damages and injunctive relief under the Antitrust Laws of the United States, 15 U.S.C. § 1 et seq., and of Missouri, RSMo § 416.011 et seq.

6

29. Defendant is the owner of United States Patent No. 4,800,116, now expired, which is directed to articles of manufacture, such as handgrips, made by a double-dip molding process that results in goods that embody the "clerical collar look" of the alleged Trademark.

30. Beginning at least as early as 1999, and continuing to the present, Defendant has engaged in an unlawful attempt to restrain and monopolize interstate trade and commerce.

31. This unlawful attempt to monopolize and restrain trade has consisted of multiple acts, including the assertion of alleged trademark rights to keep others out of the double-dip handgrip business.

32. Defendant has restrained, coerced, and prevented others from entering or engaging in the double-dip handgrip business by improperly threatening and initiating litigation based upon its alleged trademark rights, which Defendant knows are invalid and unenforceable.

33. Defendant has improperly used trademark registrations or applications in an attempt to unlawfully monopolize the double-dip handgrip business by asserting that certain trademark registrations or applications provide an exclusive right to manufacture and sell double-dip handgrips. Such use of alleged trademark rights is an unlawful attempt to extend the patent rights in U.S. Patent No. 4,800,116, which has now expired.

34. These acts were committed with the purpose and effect of preventing, reducing, and limiting competition within the United States in the market for double-dip handgrips, and constituted a wrongful attempt to monopolize the United States' market of these double-dip handgrip products.

WHEREFORE, Plaintiffs pray:

    A. For a preliminary and permanent injunction restraining Defendant from imposing or attempting to impose any unlawful restraints or requirements on

7

others with regard to double-dip handgrips through the use of invalid and unenforceable trademarks.

B.  For damages, the trebling of damages, costs, and reasonable attorneys' fees.

C.  For all other relief the Court deems just and proper.

## COUNT III
## ENFORCEMENT OF SETTLEMENT AGREEMENT

35.  Plaintiffs reallege all allegations contained in paragraphs 1 - 34 of this Complaint as if fully set forth herein.

36.  In March, 2004, as part of the settlement discussions in the Opposition, Defendant's counsel sent a first draft written settlement agreement to counsel for Plaintiffs.

37.  Thereafter, on July 14, 2005, Plaintiffs' counsel sent a second draft of the written settlement agreement to counsel for Defendant.

38.  In response, on July 25, 2005, Defendant's counsel indicated to Plaintiffs' counsel that this second draft agreement was in accord with the discussions between the parties' attorneys, and that, subject to Defendant's review, only one provision—regarding confidential information—was at issue.

39.  The following day, July 26, 2005, counsel for Plaintiffs agreed to revision of the confidentiality provision as suggested by Defendant's counsel.

40.  Defendant thereafter notified Plaintiffs that Defendant wanted to limit the geographic scope of the agreement to the United States.

41.  In December, 2005, Plaintiffs notified Defendant that Plaintiffs agreed to limit the geographic scope of the agreement to the United States, and therefore an Agreement had been reached on all material terms.

42. Thereafter, only a non-material change to the Settlement Agreement was discussed. That change was to include language in the Settlement Agreement indicating that Defendant should request quality control samples from each of the Plaintiffs, rather than Plaintiffs providing the samples on a periodic basis at regular intervals.

43. Plaintiffs provided the Settlement Agreement as a unified written instrument to Defendant on December 12, 2005. Respective counsel believed that this written Settlement Agreement would be executed within a short time.

44. In January, 2006, however, Defendant notified Plaintiffs that Defendant would not execute the written Settlement Agreement.

45. Plaintiffs are ready and willing to execute an instrument attesting to the terms and conditions of the Settlement Agreement, and are ready and willing to withdraw from the Opposition once such instrument has been executed by both parties.

46. Because of Plaintiffs' intent to act in reliance on the license granted in the Settlement Agreement, and due to Defendant's apparent intent to enforce its alleged trademark rights, Plaintiffs have a reasonable apprehension of legal action against them, and therefore request this Court to determine the parties' rights and obligations with respect to the alleged Trademark.

47. Furthermore, Plaintiffs have been and, without the relief prayed for below, will continue to be irreparably harmed by Defendant's actions in a manner which cannot be adequately compensated by money damages.

48. Defendant's conduct has been willful and without justification.

WHEREFORE, Plaintiffs pray:

A.  For a judicial determination and declaration that the parties have entered into a Settlement Agreement, whereby Defendant has licensed Plaintiffs to commercially use goods embodying the alleged Trademark;

B.  For a judicial determination and declaration that the Settlement Agreement ends the dispute that is the subject of the Opposition, and Counts I and II herein;

C.  For a judicial determination and declaration that Plaintiffs' acts in commercially using goods embodying the alleged Trademark do not infringe any of Defendant's rights;

D.  For an injunction requiring the parties to execute an instrument attesting to the Settlement Agreement;

E.  For costs of suit and reasonable attorneys' fees; and

F.  For such other relief as the Court deems just and equitable.

## COUNT IV
## BREACH OF CONTRACT

49. Plaintiffs reallege all allegations contained in paragraphs 1 - 48 of their Complaint as if fully set forth herein.

50. The parties entered into the Settlement Agreement under which Plaintiffs agreed to withdraw from the Opposition in consideration for the grant by Defendant of a license to use the alleged Trademark.

51. The Settlement Agreement is a valid and enforceable contract.

52. Plaintiffs are reasonably apprehensive of legal action instituted against them, if they take action to use the alleged Trademark in reliance on the Settlement Agreement.

53. Defendant has attempted to renounce the Settlement Agreement, and acted in contradiction to its terms by not executing an instrument attesting to the Settlement Agreement, and by stating to the TTAB that the Settlement Agreement did not exist.

54. Throughout settlement negotiations during the pendancy of the Opposition and until the Settlement Agreement was reached, Defendant was aware of Plaintiffs' reliance on the imminent nature of the parties' entry into the Settlement Agreement.

55. Plaintiffs have been and, without the relief prayed for below, will continue to be irreparably harmed by Defendant's renouncing of the Settlement Agreement in a manner which cannot be adequately compensated by money damages.

56. Defendant's breach of the Settlement Agreement is outrageous because of Defendant's reckless indifference to Plaintiffs' reliance on its existence.

57. Plaintiffs seek specific performance by Defendant through the execution of a written instrument attesting to the terms and conditions of the Settlement Agreement.

58. Defendant will not be unduly harmed by the Court's enforcement of the terms and conditions of the Settlement Agreement.

WHEREFORE, Plaintiffs pray:

A. For an injunction requiring the parties to execute an instrument attesting to the terms and conditions of the Settlement Agreement;

B. For costs of suit and reasonable attorneys' fees; and

C. For such other relief as the Court deems just and equitable.

## Demand for a Jury Trial

Plaintiffs demand a trial by jury as to all claims and all issues properly triable thereby.

Respectfully submitted,

**LEWIS, RICE & FINGERSH, L.C.**

By: _____

Frank B. Janoski, E.D.Mo. #3480
Michael J. Hickey, E.D.Mo. #101931
Bridget Hoy, E.D.Mo. #109375

500 North Broadway, Suite 2000
St. Louis, Missouri 63102
(314) 444-7600
(314) 241-6056 (facsimile)